STATE OF VERMONT

ENVIRONMENTAL COURT

```
                              }
In re: Appeal of              }
 Claude V. Offray and Gloria Offray    }        Docket No. 166-9-98 Vtec
                              }
                              }
```

DECISION and ORDER

Appellants Claude and Gloria Offray appealed from a decision of the Zoning Board of Adjustment (ZBA) of the Town of Lincoln, granting a conditional use permit to Appellee-Applicant Willard Jackson for the operation of a gravel pit. He had originally also applied for a variance to conduct a portion of the operation close to the property line, but the application for variance was withdrawn and the remaining conditional use application was limited to the area for which no variance was necessary.

Appellants are represented by John F. Evers, Esq.; Appellee-Applicant Willard Jackson appeared and represented himself with the assistance of David Wetmore, who is not an attorney; the Town of Lincoln entered an appearance by George R. Vince, Esq., but did not take an active role in this appeal. An evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge. The parties were given the opportunity to submit written requests for findings and memoranda of law. Upon consideration of the evidence and the written memoranda and proposed findings, the Court finds and concludes as follows.

Appellee-Applicant owns a 134-acre parcel of land off the Gap Road in the Town of Lincoln, which contains a former gravel pit operated from the 1940s through the early 1970s, located near the center of the property near its northerly boundary. Appellee-Applicant proposes to operate a gravel pit on a 7-acre portion of his property designated on Exhibit 3, third page, and on Exhibit 4, with no more than 5 acres to be under excavation at any time. All topsoil removed is proposed to be stockpiled in berms, to be located to the extent possible to shield Appellants' property and Town Highway #1 from the noise of the site's operations, and to be used in the reclamation of the site. The zoning district in which the property is located requires a conditional use permit for a sand and gravel pit in the

1

proposed location.  At present there is no local source for sand and gravel within the town; any sand and gravel used by the Town or by residents of the Town is brought in over local roads from elsewhere.

The land is a mix of forested and open meadow areas, and contains a gravel deposit on a knoll of land near its westerly boundary.  A road on the site (the "access road") runs from the location of the proposed gravel extraction operation to Town Highway #1.  Its configuration is proposed to be changed to reduce its slope and to make a 90 degree intersection with Town Highway #1, and its speed limit is proposed to be 15 miles per hour.  The speed limit on Town Highway #1 is 35 miles per hour at the entrance to the project's access road.  The ZBA decision appealed from imposed a requirement that Applicant install a stop sign on the access road as it exits onto Town Highway #1, that Applicant arrange for the installation of "trucks entering" warning signs in both directions on Town Highway #1 approaching the access road intersection, and that Applicant impose a 10 mile per hour speed limit on the last 500 feet of access road approaching the intersection with Town Highway #1. Appellee-Applicant did not file any cross-appeal of these requirements.

Appellants' 69-acre parcel adjoins the subject parcel.  Because of the size of Applicant's parcel, other properties in the area are located a substantial distance from the proposed excavation site.  Most of the properties in the area are agricultural and residential, except for the Lincoln School, the Town shed, and a pallet mill qualifying as light manufacturing.

Appellee-Applicant proposes to remove a maximum of 20,000 cubic yards of material annually, over the seven month operating season from mid-April through mid-November.  The trucks anticipated to be used have an average capacity of eleven cubic yards, so that an average of 260 truck round trips per month would be required to remove that amount of material.  Operating 6 days a week would result in approximately ten truck round trips per day.

Appellee-Applicant proposes to operate extraction, processing, and loading of material onto trucks Monday through Friday from 7 a.m. to 5 p.m. and to operate without excavation or processing on Saturdays from 7 a.m. to noon.  The normal processing

equipment would be a gravel sorting screen. Appellee-Applicant expects to need to operate gravel crushing equipment only approximately four weeks (two two-week periods) a year. Appellee-Applicant proposes to conduct excavation and , if necessary, blasting, no closer than 200 feet from the property boundary, and to operate processing and sorting equipment no closer than 300 feet to the property boundary, as required by §§734.3d and 734.3e. Appellee-Applicant, and to maintain noise levels from the extraction process below 75 dBA at the property boundary, except the noise from trucks (and possibly the noise during any blasting). Appellee-Applicant does not expect to need to conduct any blasting. Appellee-Applicant proposes to notify the adjoining property owners at least two weeks prior to conducting any blasting or to using any portable crusher machinery in the pit. Appellee-Applicant proposes to use every effort to minimize noise, including to limit truck speed to 15 mph on the access road, to stockpile processed material in a noise-reducing berm, to plant additional trees near the entrance to the Town Highway, to maintain a large enough pit floor area to minimize the need for trucks to back up (as the federally-required backup beepers produce an annoying noise), and to use sonic or "smart"-type backup alarms on all non-registered pit machinery.

Appellee-Applicant proposes to allocate approximately half of the gravel extracted annually to the Town of Lincoln and other local users. The Town Plan at page 6 recognizes that soil deposits within the Town may be very localized, and that land uses should be compatible with the type of soil in a given area. Specifically with regard to gravel extraction, that section of the Town Plan states that "gravel and sand banks in many areas of town lend themselves to the extraction of those materials on a small scale, in keeping with the traffic limitations of our roads," and recognizes that "such local projects could ease the [Town's] cost burden of road maintenance ans other projects by keeping hauling expenses low." The proposal therefore meets criterion §734.2p regarding the conformance of the proposal with the Town plan.

To receive a conditional use permit, Appellee-Applicant must satisfy the five general conditional use criteria in §734.1, applying the nine criteria specific to sand and gravel operations in §734.3. If necessary to protect the public safety or welfare, the Planning Commission, and hence this Court in this de novo proceeding, may impose conditions

3

related to the sixteen special criteria in §734.2.

Certain of the criteria are inapplicable and will not be further discussed. The proposal will have no adverse effect on the utilization of renewable energy resources. §734.1e. The proposal will have no adverse effect on the capacity of existing or planned community facilities. §734.1a. All parking and loading is proposed to take place at the pit site well away from the road. 734.2b. Appellee-Applicant has not now proposed any signs; if one is proposed at the access road, it will have to meet the criteria of §550 and may require a minor amendment of this permit. §734.2g. Appellee-Applicant does not propose any structures or service areas (§734.2d); any outside displays (§734.2i); any outside storage of goods (§734.2j); or any on- site or municipal water supply or sewage disposal (§734.2k). Portable toilets will be provided for the use of employees and truck drivers on site. Appellee-Applicant does not propose any extension of a non-conforming operation. §734.3g.

The proposal will not have any no undue adverse effect on the scenic or natural beauty of the area or its aesthetics. The site was formerly operated as a gravel pit and now appears as an abandoned gravel pit, with unreclaimed areas, although it is not visible from beyond Appellee-Applicant's property except that it is partially visible from certain limited areas on Appellants' property. §734.2n. After reclamation, it will have an improved appearance compared to its present appearance, and will blend in with the surrounding rolling landscape. The project site affects no historic sites, and no important wildlife habitat or rare or irreplaceable natural areas identified in the Town Plan or in State law.

Section 734.3a is satisfied by the proposed reclamation plan; however, the Court cannot find that the cost in present dollars of the proposed reclamation plan has been adequately updated from the 1997 estimate. Accordingly, while Appellee-Applicant is willing to post a performance bond or letter of credit to cover the cost of the reclamation plan, the Court will impose a condition requiring ZBA approval of an updated plan and bond amount prior to the commencement of excavation.

Sections 734.3b and 734.3h are satisfied by Appellee-Applicant's proposal not to remove any topsoil off the site, and to grade the stockpiled topsoil over the site and to restore the site, fertilize, mulch and reseed it to result in a rolling landscape after extraction

4

is complete. The finish slopes are proposed to be in the range of 6% to 8%, and will not under any circumstances exceed 50% (a 1:2 slope). Any slopes greater than 20% (a 1:5 slope) will be adequately stabilized by being planted with a mix of aspen and white pine seedlings at a density of 600 per acre. Section 734.2f pertaining to grading is satisfied by the more specific requirements of 734.3b.

Section 734.3i is satisfied by Appellee-Applicant's proposal to allow no more than 5 acres at a time to be open for excavation, with the additional requirement that areas beyond the initial five acres may be opened to excavation only after the corresponding portion of the exhausted site has been stabilized and restored as provided in the reclamation plan.

Section 734.3c is satisfied by the fact that the Stetson gravely soils within the pit are very well drained, and by Appellee-Applicant's proposal to slope the pit floor towards the pit face in a so-called cup shape, allowing surface drainage by infiltration through the pit floor.

Sections 743.3d and 734.3e are satisfied by Appellee-Applicant's proposal, with the conditions that no excavation or blasting shall occur within 200 feet of the property line and no operation of powered processing or sorting equipment shall occur within 300 feet of the property line. Appellee-Applicant proposes to conduct these operations only within the proposed hours of 7 a.m. to 5 p.m. Monday through Friday, and only to conduct loading activities during the Saturday operating house of 7 a.m. to noon, which the Court finds to be reasonable operating hours for those activities. Powered equipment necessary to load gravel onto trucks may be operated during the Saturday hours of 7 a.m. to noon, as well as during the weekday hours. Dust from the sorting equipment will be controlled with water and will be controlled from blowing onto Appellants' property by the forested buffer, satisfying §734.3e . Dust from the pit floor and roadways will be controlled with water and calcium chloride as necessary. No residential structures are located within close proximity to the excavation site.

Section 734.2(l) will be satisfied by a condition that no explosives be stored at the site  and that any fuel kept on site for use by the site machinery be stored in compliance with all state or federal fire safety and environmental standards.

Section 734.3f will be satisfied by imposing as a condition that, in addition to the

5

slope stabilization requirements as the site is undergoing reclamation, during excavation any slopes in excess of 1:2 shall be adequately fenced.

The traffic to be generated by the proposal will not exceed the capacity of Town Road #1 or adversely affect traffic on the roads or highways in the vicinity. §734.1c. Town Highway #1 is used by traffic traveling through the Town from elsewhere, and has not been shown to be near its capacity limit. Approximately half the expected output of this gravel pit will be allocated to the Town, which otherwise would have had to bring gravel into the Town over the roads and highways in the vicinity. Accordingly, only at most half of the traffic to be generated by the proposed operation is traffic to be added to the roadways. Even if all that remaining traffic is additional traffic, an additional five round trip truck trips per day will not adversely affect the traffic on the nearby roads and highways.

Section 734.2e will be satisfied in that the configuration of the intersection of the access road with Town Road #1 has been changed to provide a safe right angle turn, a road width at the entrance to accommodate gravel trucks and fire and safety vehicles, and a paved apron to prevent road surface gravel from migrating onto Town Highway #1. The access road is to be posted with speed limit of 15 mph, except for a 10 mph speed limit in the final 500 feet as the trucks approach Town Highway #1. In addition, the new configuration of the access road will require that trucks move slowly to make the turn at the bottom of the access road. The area for vehicular circulation within the pit floor will be wide enough to allow for the adequate circulation of gravel trucks and fire and safety vehicles, as well as to minimize the occurrence of the automatic backup beepers required by Federal law. Sight distances in both directions are adequate at the Town Highway #1 speed limit of 35 miles per hour, augmented by the required safety signs warning of "trucks entering."

Section 734.2h imposes a requirement that the proposal not generate "obnoxious or excessive noise, smoke, vibration, dust, glare, odors, electrical interference or heat that is detectable at the boundaries of the lot." With the forested buffer and the earth berms, the proposal will not generate obnoxious or excessive smoke, vibration, dust, glare, odors, electrical interference or heat detectable at the boundaries of the lot, but no evidence was presented to allow the Court to conclude that Appellee-Applicant's proposed limitation of the noise level at the property boundaries to 75 dBA (except for the noise from trucks)

6

would necessarily satisfy §734.2h. Accordingly, the Court will instead impose as a condition that the performance standard of §734.2h be met by the actual operation of the facility. Appellee-Applicant proposes to create a pit floor area large enough to minimize the need for trucks or pit machinery to have to activate backup beepers; to place the stockpiled topsoil in berms designed to reduce noise traveling beyond the property boundaries; to limit the speed on and the slope of the access road to reduce truck noise and reduce the need for the trucks to use their so-called jake brakes; to limit Saturday hours of operation to loading, with no processing or extraction, and to remain closed on Sundays and holidays, and to plant additional trees where the access road approaches the property boundary near the intersection with Town Highway #1. Additional noise-reduction would be available, if necessary, by lining the chutes of the gravel-handling machinery with rubber or wood. It is likely that the noise reduction strategies proposed by Appellee-Applicant, together with Appellee-Applicant's professed willingness to work with the neighboring property owners to install additional noise reduction methods if necessary, will enable the project to meet the performance standard.

With the conditions imposed by the Court, the proposal will not adversely affect the character of the area. §734.1b. The character of the area is a mixed use rural area, including residential, agricultural and municipal uses (including agricultural and town road maintenance machinery) as well as a light industrial use. The project location was formerly in use as a gravel pit and the resumption of that use remains consistent with the character of the area, so long as an adequate forested buffer is left between the project area and the property boundary, and additional trees are planted in the area between the newly-configured access road and the property boundary, where the access road approaches the boundary near Town Highway #1. With the conditions imposed by this decision, the proposed use is not expected to adversely affect Appellants' and others' continued enjoyment of and access to existing and approved uses in the vicinity. 734.2m. The maintenance of the forested buffer and planting of an additional buffer near Town Highway #1 will satisfy §734.2c regarding landscaping, and no increase in the minimum setbacks is necessary to protect the neighboring property from the proposed operation. §734.2a.

With the conditions imposed upon it by this decision, the proposal will comply with

7

all bylaws and regulations in effect at the time of the application. §734.1.d.  No other conditions are necessary for the safety and general welfare of the public,  §734.3j, or to satisfy the conditional use criteria. §734.2o.


Based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellee-Applicant's application for a conditional use permit to conduct a gravel pit operation on his property in Lincoln is GRANTED for the following limited time period and under the following conditions, for 24 months from the time this order becomes final, subject to renewal of the permit upon application at any time after one full operating season.

Appellee-Applicant shall submit for approval by the ZBA a revised reclamation plan and associated budget of costs, updated in value to the date of this order.  Upon approval of such plan and prior to commencement of extraction, Appellee-Applicant shall post a bond or execute a letter of credit sufficient to cover the reclamation plan.

The gravel pit shall be operated within the 7-acre portion of the property shown in the application, with no more than 5 acres open at any time.  All topsoil shall be stockpiled in berms placed so as to reduce the migration of noise and dust from the site, and shall be used in the reclamation of the site.  During excavation any slopes in excess of 1:2 shall be adequately fenced.  Reclamation of the site shall follow the reclamation plan to stabilize all slopes, and shall result in a rolling landscape with typical slopes of 6% to 8%, with no finished slope greater than 50% (1:2).

No more than 20,000 cubic yards of material shall be removed annually, within the period from April 15 through November 15.  The hours of operation are Monday through Friday from 7 a.m. to 5 p.m. and Saturdays from 7 a.m. to noon, except that only loading and trucking, that is, no processing or sorting, shall be conducted on Saturdays, except during emergency conditions and with prior notice to all neighboring landowners and the Zoning Administrator.

No more than 60 truck round-trips shall occur in any week, and not to exceed fifteen truck round-trips in any single day, except that in April of each year Appellee-Applicant may designate three weeks in the spring and in September of each year Appellee-Applicant may designate three weeks in the fall, during which up to 120 truck round trips may occur

8

per week, not to exceed 20 round trips in any single day. Appellee-Applicant shall give at least one week advance notice in writing to all adjoining landowners and to the Zoning Administrator of the designated weeks of increased activity.

Gravel crushing equipment may be operated for no more than four weeks in any calendar year, with at least two weeks advance notice in writing to all adjoining property owners and to the Zoning Administrator. If any blasting is necessary, adjoining property owners and the Zoning Administrator shall be notified in writing at least three weeks in advance.

No explosives shall be stored at the site. Any fuel kept on site for use by the site machinery shall be stored in compliance with all applicable state and federal fire safety and environmental standards.

No excavation or blasting shall occur within 200 feet of any property boundary, and no powered processing or sorting equipment shall be operated closer than 300 feet to any property boundary. No obnoxious or excessive noise levels from the operation, except for that from occasional blasting, shall occur which is detectable at any property boundary. Appellee-Applicant shall enforce a speed limit of 15 miles per hour for trucks on the access road, and shall make every effort to minimize noise from the operation of the gravel pit, including to stockpile processed material in a noise-reducing berm, to plant additional trees near the entrance to the Town Highway, to maintain a large enough pit floor area to minimize the need for trucks to back up, to use sonic or "smart"-type backup alarms on all machinery on which standard back-up alarms are not required by federal or state law, and to reduce slopes on the access road to minimize the need for loaded trucks to use their so-called jake brakes.

Appellee-Applicant shall install a stop sign on the access road as it exits onto Town Highway #1, Appellee-Applicant shall arrange for the installation of "trucks entering" warning signs in both directions on Town Highway #1 approaching the access road intersection. Appellee-Applicant shall impose a 10 mile per hour speed limit on the last 500 feet of access road approaching the intersection with Town Highway #1.

Within the initial 24 months of operation, the Town of Lincoln Zoning Administrator and ZBA may conduct such site visits, noise measurements or other investigation to allow

9

the ZBA to rule on an application for renewal of the permit. An application for renewal of the permit may be made prior to the expiration of this initial permit term but no sooner than after the first twelve months from the date this order becomes final.

Dated at Barre, Vermont, this 4th day of October, 2000.

_____
Merideth Wright
Environmental Judge